## Wenner's Appeal

*Richard A. Abbott*, for appellant.
*Orrin E. Boyle*, for respondents.

HENNINGER, P. J., October 22, 1945.—Appellant, a veteran of World War II, discharged from military service on September 24, 1945, applied to the Lehigh County Registration Commission on October 8, 1945, for registration as a voter and has appealed to this court from the denial of his application by said commission, which denial is based upon the closing of the registration books on September 15, 1945, or 50 days prior to the election: The Permanent Registration Act in Cities of the Third Class, Act of May 25, 1937, P. L. 849, sec. 17, as amended by section 1 of Act of May 15, 1945, P. L. 470, 25 PS §947-17.

The petition for appeal asks leave to vote a military ballot at the election as a result of the denial of registration, based upon the decision of Judge Dumbauld in Registration of Lately-Discharged Veterans, 8 Fayette. 177, 54 D. & C. 637. We are also urged to follow the action recommended at the convention of county commissioners, who in their several counties constitute the respective registration commissions. We regret that we cannot subscribe to the conclusions of the learned President Judge Dumbauld.

As a court, we cannot pass edicts to correct our legislature's errors and omissions and whatever we may think of the futility of their cumbersome and unrealistic gestures to enable soldiers to register and to vote, they were acting within their power, they expressed their intention clearly and we have no power to nullify their enactments.

Much of what has been said of the sanctity of the constitutional right of franchise (West v. Delaware Co. Board of Elections, 32 Del. Co. 289) becomes irrelevant when we turn to article VIII, sec. 1, of the Constitution of Pennsylvania and find that the right to vote is "subject, however, to such laws requiring and regulating the registration of voters as the General Assembly may enact". That election machinery or procedure set up by the legislature may take precedence

over constitutional provisions is demonstrated in the cases of Watson v. Witkin et al., 343 Pa. 1, and O'Neill et al. v. White et al., 343 Pa. 96.

Had the legislature failed to provide for registration of persons in military service, there might be a valid argument that such persons had been deprived of their constitutional right to vote, but an amendment to the Registration Act of August 1, 1941, P. L. 694, sec. 2, 25 PS §947-19.1, provided machinery to register voters while away from home in military service. The failure of service men to take advantage of this privilege— less than ten have so registered—is an indication of its futility, but the act does represent the judgment of the legislature in a field entrusted to it by the constitution.

The Registration Act of 1937, supra, in section 37, exempts from registration only those who are in actual military or naval service. Section 102($w$) of the Election Code of June 3, 1937, P. L. 1333, 25 PS §2602, as amended by the Act of March 9, 1945, P. L. 29 of the 1945 Legislature, defines as qualified electors in actual military service, "a qualified elector . . . who is or may be in the military or naval service of the United States . . ." The words "is" and "may be" in the definition clearly refer to the time of election and do not extend for the period of hostilities and six months thereafter, the right to vote a military ballot to any one ever a soldier in this war. That interpretation would for example entitle any person in service in 1941 and discharged in 1942 to vote a soldier's ballot without registration and to continue to do so until six months after the Federal Government sees fit to declare hostilities ended. The legislature neither said nor meant any such thing.

That right to vote a soldier's ballot is contained in section 1301 of the Election Code of 1937, as amended by section 10 of the Act of 1945, 25 PS §3131:

"Whenever any qualified elector in actual military service is absent from his place of residence on any day

appointed by law for holding a general, municipal or primary election . . ."

The act permitting an election board to receive a soldier's ballot when such soldier by some coincidence happens to be home on election day, has no bearing on the intention of the legislature regarding a person no longer in service. It is further to be noted that the latter act (Act of May 5, 1944, P. L. 1445, 25 PS §4031-42) contains the same definitions of persons in actual military service.

To encourage a veteran to attempt to vote a military ballot places a heavy responsibility upon the court, for both the election boards who accept a military ballot from an unregistered voter and the voter himself incur heavy penalties, if such person was not entitled to vote such ballot: Election Code of 1937, supra, section 1823, 25 PS §3523, and section 1838, 25 PS §3538.

Furthermore, to permit veterans to vote a military ballot may be simply a futile gesture. A candidate's margin will either be so great as to make it immaterial whether or not the veterans voted or the margin will be so slight that a disgruntled candidate will later question the veteran's right to vote and no predetermination by the court will make such a vote valid. For the reasons expressed above, we are unwilling to adopt the reasoning of the Fayette County case.

We are in entire accord, however, with the determination to find means to prevent disfranchisement of veterans if it can be done without judicial usurpation of the legislature's prerogatives. We believe that it is possible to remedy the situation without either violation or evasion of the law.

The 1945 Assembly, which adjourned while V-E Day was imminent, did not contemplate either the sudden collapse of Japan or the dilemma which the returning veteran would face. They must have known, however, that only a handful of these soldiers had registered as voters. If these statesmen, who are exposed to politics,

if not immersed in it, failed to anticipate the need for effective means of enfranchising the returned veteran, how could our fighting men, engaged in still more pressing and important work, think ahead to the problem of how they might gain the privilege of helping to govern the country they had saved.

We start with the proposition, therefore, that these veterans are not to be condemned for their failure to take advantage of the act permitting them to register while still in military service. The next proposition is that every stone is to be turned to enable a soldier or a veteran to enjoy his rights as a citizen and that no inconvenience to election officials should be permitted to stand in the way of his voting. So it was provided that a blank ballot with an appended list of candidates could be used: Section 1303 of Election Code of 1937, supra, as amended by section 10 of 1945, P. L. 29; the person in military service could apply for a ballot at any time before any election: section 1302 of the same act; the counting of the vote is delayed in order to enable ballots to reach the computers: section 1307 of the same act; even in the case of a civilian voter, if the decision of his contested right to vote cannot be made in time for inclusion in the registry books, he may vote on a certified order of the court: Registration Act of May 25, 1937, P. L. 849, sec. 42(c), 25 PS §947-42.

There is only one obstacle to registration of discharged veterans and that is the provision of section 17 of the Registration Act, supra, as amended by the Act of May 15, 1945, P. L. 470, 25 PS §947-17, stating that such commission shall receive applications for registration on each day, except inter alia, Sundays, holidays, and the 50 days next preceding an election. The only apparent reason for excepting the term of 50 days prior to election as a registration period is as a matter of convenience for the county board of elections so that they may have ample opportunity to prepare

for election and to prepare and publish the street lists required by section 34 of the Registration Act, 25 PS §947-34.

The language of section 17 of the Registration Act could be interpreted that registration was mandatory on the unexcepted days and permissive on the excepted days, but we do not believe that was the legislature's intention, for such an interpretation would pave the way for fraud and favoritism. In the case of veterans, however, the same argument does not apply. They are a nonpolitical group whose membership is determined by factors that are fortuitous and entirely beyond the control of the registration commission and a group that enlists our respect, gratitude, and sympathy.

The act does not expressly forbid registration on the excepted days and we believe that the merits of veterans' claims to the right to vote far outweigh any inconvenience that may result from their late registration and that their votes thus cast will surely count in the election and that, therefore, their apparent right to vote will not be a mere idle gesture. No one questions the right of this group to a share in our government, and therefore, although higher courts might later declare our decision to be an erroneous interpretation of the Registration Act, we will nevertheless not have permitted anyone to vote who did not possess a constitutional right to do so. Furthermore, our solution of the problem places the responsibility squarely on this court and will not subject others to any penalties.

One cannot expect veterans to register on the date of their discharge or before becoming oriented to civilian responsibilities. The particular veteran involved in this appeal was discharged after September 15, 1945, the date when the registration books had closed, but we believe the privilege of registration should also be granted to all veterans discharged on or after September 1, 1945, and that registration of veterans discharged after September 1, 1945, should be

kept open up to election day itself. We have no doubt that this decision will cause inconvenience to the registration commission and board of elections, but will present no problems that are impossible of solution.

Our decree will be based, not upon appellant's prayer, but upon what we consider his rights under the factual situation presented and within the range of relief prescribed under section 42(c) of the Registration Act, supra.

Now, October 22, 1945, the court finds that an injustice has been done to Richard L. Wenner and the appeal of the said Richard L. Wenner from the denial of the application of his registration to vote is sustained and the Lehigh County Registration Commission is directed to accept the registration of the said Richard L. Wenner and to register him on the registration books as a voter entitled to vote at the Municipal Election to be held November 6, 1945, in the Second District of the Eleventh Ward of the City of Allentown, Lehigh County, Pa., and said registration is thereafter to remain effective subject to the provisions of the Third Class City Registration Act. The court further directs the Lehigh County Registration Commission to accept the registrations of other persons who come within the definition of qualified electors in actual military service, as defined by the several acts of assembly relating thereto, who have been discharged or released from such service on or since September 1, 1945, with the same force and effect as though such persons had made an application, which application had been denied and an appeal taken to this court, which appeal was sustained and registration ordered by the court, and is to continue taking such registrations up to and including the day of election, providing such persons are otherwise qualified to vote.

The costs of this appeal shall be paid by the County of Lehigh.